[Civ. No. 49970. Second Dist., Div. One. Sept. 15, 1977.]

BOARD OF MEDICAL EXAMINERS et al.,
Plaintiffs, Cross-defendants and Respondents, v.
TERMINAL-HUDSON ELECTRONICS, INC. OF CALIFORNIA,
Defendant, Cross-complainant and Appellant;
CALIFORNIA OPTOMETRIC ASSOCIATION,
Intervener, Cross-defendant and Respondent.

COUNSEL

Charles W. Anshen for Defendant, Cross-complainant and Appellant.

Evelle J. Younger, Attorney General, and Alvin J. Korobkin, Deputy Attorney General, for Plaintiffs, Cross-defendants and Respondents.

Wilke, Fleury, Hoffelt & Gray, William A. Gould, Jr., and Alan G. Perkins for Intervener, Cross-defendant and Respondent.

OPINION

HANSON, J.—Terminal-Hudson Electronics, Inc. of California, dba Opti-Cal (hereinafter referred to as Opti-Cal.), has filed an appeal from the judgment of April 27, 1976, in which the superior court in an action filed by the Board of Medical Examiners, State of California, and the Board of Optometry, State of California (hereinafter referred to collectively as the Board), permanently enjoined and restrained Opti-Cal from advertising the price of eyeglasses or the cost of any commodities

furnished or services performed by a person licensed as a registered dispensing optician.

## FACTS

On March 21, 1974, the federal district court in the State of Virginia held unconstitutional those Virginia laws which restrained the advertising of the price of prescription drugs by pharmacists (*Virginia Citizens Consum. Coun., Inc.* v. *State Bd. of Pharm.* (E.D.Va. 1974) 373 F.Supp. 683). Following that ruling Opti-Cal in July of 1974 placed advertisements in various newspapers throughout the State of California advertising that the price of any prescription eyeglasses at its offices was $19.90, and that the price for single vision contact lenses was $60.50 a pair.

Thereafter the Board in August 1974 obtained a temporary restraining order prohibiting Opti-Cal from further advertising of prices until hearing on its application for a preliminary injunction to issue pending action on the Board's complaint seeking a permanent injunction against such practices. The Board in its application alleged that Opti-Cal had been issued certificates to engage in the business of a registered dispensing optician at various locations throughout the State of California; that Opti-Cal had advertised in various newspapers of general circulation the price of eyeglasses and contact lenses in violation of sections 2556[1] and 3129[2] of the Business and Professions Code[3] which

[1]Business and Professions Code section 2556 reads as follows: "It is unlawful to do any of the following: To advertise at a stipulated price or any variation of such a price or as being free, the furnishing of a lens, lenses, glasses or the frames and fittings thereof; to advertise any examination or treatment of the eyes in connection with the sale of eyeglasses, spectacles, or the parts thereof; to insert any statement in any advertising in connection with the business of dispensing optician which is false or tends to mislead the public; to make use of any advertising statement of a character tending to indicate to the public any superiority of any particular system or type of eyesight examination or treatment over that provided by other licensed ocular practitioners; to advertise the furnishing of, or to furnish, the services of a refractionist, an optometrist, a physician and surgeon; to directly or indirectly, employ or maintain on or near the premises used for optical dispensing, a refractionist, an optometrist, a physician and surgeon, or a practitioner of any other profession for the purpose of any examination or treatment of the eyes; or to duplicate or change lenses without a prescription or order from a person duly licensed to issue the same."

[2]Business and Professions Code section 3129 reads as follows: "It is unlawful to advertise at a stipulated price, or any variation of such a price, or as being free, any of the following: [¶] The examination or treatment of the eyes; the furnishing of optometrical services; or the furnishing of a lens, lenses, glasses, or the frames or fittings thereof. [¶] The provisions of this section do not apply to the advertising of goggles, sun glasses, colored glasses or occupational eye-protective devices, provided the same are so made as not to have refractive values."

[3]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

prohibited the advertising of (a) prices for such commodities and (b) prices for the furnishing of specified kinds of professional services. Copies of the advertisements which contained the material that allegedly violated these statutes were attached to and incorporated by reference in the complaint. As a second cause of action it was alleged that Opti-Cal violated section 651.3[4] which prohibits specified licensees, including registered dispensing opticians and optometrists, from advertising prices for services or commodities furnished in connection with the professional practice or business for which he is licensed. The Board on the basis of these allegations claimed it was entitled to a preliminary injunction restraining Opti-Cal from engaging in various enumerated advertising practices.

While the action to obtain a preliminary injunction was still pending, an order to show cause in re contempt issued against Opti-Cal for allegedly violating the temporary restraining order by continuing price advertising. On October 8, 1974, hearing was held, evidence was taken and the court found that Opti-Cal had willfully violated its order on eight separate occasions, each of which constituted a separate contempt. As a consequence the court imposed a fine of $2,000. On the same day, the court granted leave to the California Optometric Association and various named members of its board of trustees (hereinafter referred to as COA) to file a complaint in intervention in the principal action. The complaint in intervention charged the defendant Opti-Cal with similar violations of sections 2556, 3129 and 651.3 and prayed that upon trial in the present action an injunction be issued permanently enjoining Opti-Cal from in any way or manner whatsoever advertising the price

---

[4]Section 651.3 as it existed in 1974 read as follows: "No person, whether or not licensed under this division, shall advertise or cause or permit to be advertised, any representations in any form which in any manner, whether directly or indirectly, refer to the cost, price, charge, or fee to be paid for any commodity or commodities furnished or any service or services performed by any person licensed as a physician and surgeon, optometrist, pharmacist, or registered dispensing optician, when those commodities or services are furnished in connection with the professional practice or business for which he is licensed; provided, however, that the provisions of this section do not apply to the furnishing of information regarding benefits available, and charges therefor, under the coverage of any hospital or medical service or insurance plan. [¶] This section shall not be construed to do any of the following: [¶] (a) Modify or establish prices or fees or modify or affect in any manner any other provisions of this division. [¶] (b) Prohibit advertising concerning the allowance of credit, time payments, budget terms, or the allowance of any other method of payment for a commodity or a service where the advertising contains no indication of cost, price, charge, or fee. [¶] (c) Prohibit the advertising of any drug or device which does not require a prescription." (Stats. 1970, ch. 1271, § 1, p. 2295.)

charged for (a) lenses, glasses or frames; (b) optometrical services; or (c) the cost of any commodities furnished or services performed by a person licensed as an optometrist or a registered dispensing optician.

On September 23, 1974, the court issued its preliminary injunction prohibiting Opti-Cal from advertising prices for glasses, lenses or services. The matter was brought to trial in November of 1975. During the course of trial, Opti-Cal with leave of court filed a cross-complaint for declaratory relief alleging that an actual controversy had arisen between the Board and COA on one hand and Opti-Cal on the other; that it affected the legal rights and duties of the parties since during August 1974 Opti-Cal had advertised the price of eyeglasses and contact lenses and plaintiffs sought to obtain an injunction; and that sections 2556, 3129 and 651.3 which plaintiffs sought to enforce violated article I, section 2 of the California Constitution and the First Amendment of the United States Constitution because they constituted a prima facie restraint on the right of defendant Opti-Cal to freely disseminate commercial information. Defendant Opti-Cal accordingly asked that the Board and COA be enjoined from taking any action to enforce the provisions of sections 651.3, 2556 and 3129 relating to the advertising of prices for eyeglasses or contact lenses and prayed that the court should declare those sections unconstitutional as to registered dispensing opticians.

At the close of the trial the court by minute order of November 12, 1975, granted the permanent injunction prayed for by the Board and COA. The court provided that pending entry of final judgment the preliminary injunction should remain in full force and effect. With respect to the cross-complaint the court held the statutes in question to be constitutional. It ordered counsel for plaintiffs to prepare the judgment and findings of fact and conclusions of law "if requested."

Thereafter the court on motion on December 24, 1975, ordered the preparation of proposed findings. These were prepared and on February 10, 1976, Opti-Cal filed its motion for reconsideration or new trial (which was apparently not acted upon) and its opposition to the proposed findings of fact and conclusions of law. The final judgment including findings of fact and conclusions of law was filed on April 26, 1976, before *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817], was decided. The trial court found, inter alia, that Opti-Cal had violated sections 2556 and 651.3 by advertising

the price of eyeglasses and that these two sections were constitutional with respect to the prohibition against the advertising of prices by registered dispensing opticians. Accordingly, the court permanently enjoined Opti-Cal and those affiliated with that company from performing anywhere in the State of California, directly or indirectly, any or all of the following acts: "A. Advertising or causing to be advertised at a stipulated price or. any variation of such a price or as being free, the furnishing of a lens, lenses, glasses or the frames and fittings thereof. [¶] B. Advertising or causing or permitting to be advertised any representations in any form which in any manner, whether directly or indirectly, refer to the cost, price, charge, or fee to be paid for any commodity or commodities furnished or any service or services performed by any person licensed as a registered dispensing optician." The judgment, in accordance with the foregoing conclusions, denied Opti-Cal declaratory relief on its cross-complaint.

On March 16, 1976, the California trial court once again adjudicated contempt charges against Opti-Cal and fined it $20,500,[5] this time finding it guilty of 41 counts of contempt for violations of the preliminary injunction which remained in effect.

Meantime, during the pendency of the present proceeding in the state court, an action attacking the constitutionality of the statutes the Board herein seeks to enforce was in 1974 instituted in federal court by a consumer group called California Citizens Action Group (hereinafter referred to as CCAG). CCAG sought an injunction against enforcement of sections 2556, 3129, and 651.3 by California statutory agencies including the Department of Consumer Affairs, State Board of Optometry and State Board of Medical Examiners, and their members, on grounds of unconstitutionality. (See *Terminal-Hudson Electronics* v. *Dept. of Con. Aff.* (C.D. Cal. 1976) 407 F.Supp. 1075.) Shortly after CCAG filed its action, Opti-Cal instituted in federal district court a companion case (No. 74-2321) against substantially similar named defendants seeking identical temporary and permanent relief from state law infringement on its First Amendment rights. On January 6, 1976, the federal district court in California issued a preliminary injunction in favor of CCAG enjoining the State of California, its officers, employees

---

[5]Opti-Cal sought a writ of mandate to prevent enforcement of the contempt but their petition was dismissed by the appellate court. Subsequently. Opti-Cal sought a stay of enforcement; a temporary stay issued but was subsequently dissolved and the petition for permanent stay was denied by the California Supreme Court on May 13. 1976.

and agents from enforcing sections 2556, 3129 and 651.3 pending further hearings. At the same time the federal court, though expressing its conviction that Opti-Cal was entitled to relief correlative to that granted CCAG, reconsidered defendants' motion and dismissed as to Opti-Cal. It took this action on the ground that the proceeding pending in the state court (the present case), though civil and injunctive in nature, was based on statutes providing possible criminal penalty, and this rendered the proceedings " 'akin to a criminal proceeding' " (*Terminal-Hudson Electronics* v. *Dept. of Con. Aff., supra,* 407 F.Supp. at p. 1082).

The defendants appealed the preliminary injunction granted CCAG by the federal district court and on March 22, 1976, a stay of enforcement was granted by the United States Supreme Court. (*Board of Optometry of California* v. *California Citizens Action Group* (1976) 426 U.S. 916 [49 L.Ed.2d 370, 96 S.Ct. 2619].) Thereafter on June 7, 1976, following the rendition of its decision in *Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, that court vacated the judgment issued by the district court and remanded the case for further consideration in view of its ruling in the *Va. Pharmacy Bd.* case. (*Board of Optometry of California* v. *California Citizens Action Group, supra.*) In accordance with that directive, the federal district court finally on December 20, 1976, granted the request of CCAG for declaratory relief and determined sections 2556, 3129 and 651.3 to be unconstitutional on the basis of *Va. Pharmacy Bd.* (California Citizens Action Group v. Department of Consumer Affairs, No. 74-2079 FW, C.D. Cal.). This judgment was not appealed.

Before the United States Supreme Court remanded the federal court case, Opti-Cal on May 24, 1976, made a motion requesting the state court to vacate or set aside its decision of November 12, 1975, granting the permanent injunction and to grant a new trial or reconsider its decision (Code Civ. Proc., §§ 657, 662), to exonerate the contempt, and to award Opti-Cal attorney's fees and costs on specified grounds including newly discovered evidence, insufficiency of the evidence, and that the decision was against the law. The principal basis for this motion was the opinion of the United States Supreme Court in the case of *Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748 (decided May 24, 1976). The court therein held that for a state to completely suppress and prohibit the dissemination of truthful price information by pharmacists about lawful activities, e.g., the advertising of the prices of prescription drugs, violated freedom of speech protected by the First Amendment.

The trial court in the present case by minute order of June 2, 1976, noted that Opti-Cal's motion for new trial was not timely (Code Civ. Proc., § 659) but elected to treat it as a motion for reconsideration (Code Civ. Proc., § 663) and ordered nunc pro tunc an extension of time for its filing through May 24, 1976. It thereupon set the matter for hearing on June 16, 1976, and invited the parties to file briefs relating to its treatment of the motion, Opti-Cal's request for exoneration from contempt and refund of the $2,000 fine previously paid and its claim for damages for allegedly wrongful issuance of injunctive relief, and what the elements of such damages might be.

Although it appears that Opti-Cal subsequently abandoned the claim for damages, the other matters remained before the trial court when on June 16 it concluded that it was without jurisdiction to vacate its original judgment and ordered a continuance to August 24, 1976, on the issues relating to the contempts. The court, however, did, under its inherent powers to modify, amend or dissolve an injunction, dissolve the permanent injunction which was granted November 12, 1975, and incorporated in the April 27, 1976, judgment. The court took this action on the ground "that the applicable law has been changed by the decision of the U. S. Supreme Court in the case of Virginia State Board, etc. vs. Virginia Citizens, etc."

On June 23, 1976, Opti-Cal filed its notice of appeal solely from the judgment entered April 27, 1976. No further proceedings were had in the trial court after June 23, 1976.

## Issues

The determinative issues on appeal are (1) whether or not sections 2556 and 651.3 insofar as they prohibit price advertising by registered dispensing opticians represent an unconstitutional violation of free speech guaranteed by the First Amendment of the United States Constitution; (2) whether or not Opti-Cal should be exonerated from the contempt judgment of March 12, 1976, for violating the preliminary injunction, and refunded the $2,000 fine paid on the earlier contempt; and (3) whether or not Opti-Cal is entitled to recover attorney's fees and costs incurred in the defense of the action.

## DISCUSSION

## I

The pivotal issue in this case is the extent to which the protective umbrella of the First Amendment shields purely commercial speech from governmental regulation.

In recent years the trend of the decisions, which held that commercial speech lay outside the pale of First Amendment protection, has been reversed. Commercial speech has been brought within the scope of First Amendment protection and its dissemination is guaranteed in relation to such diverse enterprises as exhibiting "adult" films (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440]), offering abortion referral services (*Bigelow* v. *Virginia* (1975) 421 U.S. 809 [44 L.Ed.2d 600, 95 S.Ct. 2222]), dispensing pharmaceutical preparations (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748; see also *Terry* v. *California State Board of Pharmacy* (N.D.Cal. 1975) 395 F.Supp. 94, affd. (1976) 426 U.S. 913 [49 L.Ed.2d 368, 96 S.Ct. 2617]), and offering legal services (*Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691]).

The trial court in the present case dissolved the permanent injunction earlier issued in favor of the Board after the decision in *Va. Pharmacy Bd.*

The United States Supreme Court in *Va. Pharmacy Bd.* held that a Virginia statute which subjected a pharmacist to penalties for "unprofessional conduct" if he advertised prescription drug prices was an unconstitutional violation of the First Amendment. The court emphasized that the consumer's interest in commercial speech is substantial and that such speech often carries information of significant societal import since in serving to inform the public of the availability, nature and prices of products and services it performs an indispensable role in the allocation of resources in a free enterprise system, and it assures informed and reliable decisionmaking.

Several months later the United States Supreme Court in a similar vein struck down a disciplinary rule of the Supreme Court of Arizona which prohibited attorneys from advertising in newspapers or other media. (*Bates* v. *State Bar of Arizona, supra.*) In so doing, the court

relied heavily on the rationale for striking down the statute purporting to regulate professional conduct in *Va. Pharmacy Bd.* It reviewed the asserted justifications for prohibiting such advertising, especially arguments relating to resulting increased price competition which might reduce the quality of services and the integrity of the professional judgments involved in regulating such services, and rejected these contentions. The court perceived no virtue in state regulations which were protectively paternalistic and designed to keep the citizens in ignorance of availability and prices of professional goods and services. It observed that the "alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 770 [48 L.Ed.2d 346, 363, 96 S.Ct. 1817].) A fortiori, that court found the disciplinary rules prohibiting attorneys from advertising unconstitutional.

In the case at bench respondent Board argues that the quality of the product offered is likely to deteriorate if opticians are permitted to advertise in order to sell eyewear at competitively lowered prices. The United States Supreme Court in the *Va. Pharmacy Bd.* footnoted the observation that different factors might be significant in regard to certain kinds of advertising for the various professions.[6] We note, nonetheless, that this reference relates principally to the content of the advertising rather than to the basic issue of whether the professional person might constitutionally advertise the *prices* at which certain routine services would be performed or goods be made available. This was the specific issue in the case of *Bates.*

In *Bates* the advertising placed by the attorneys merely stated that they offered legal services at reasonable fees and listed their fees for certain services. The advertising contained no claims, extrava-

---

[6] "'We stress that we have considered in this case the regulation of commercial advertising by pharmacists. Although we express no opinion as to other professions, the distinction, historical and functional, between professions, may require consideration of quite different factors. Physicians and lawyers, for example, do not dispense standardized products; they render professional *services* of almost infinite variety and nature, with the consequent enchanced possibility for confusion and deception if they were to undertake certain kinds of advertising.' [*Va. Pharmacy Bd.* v. *Va. Consumer Council*] 425 U.S., at 773 n. 25 (emphasis in original). . . ." (*Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350, 365, fn. 17 [53 L.Ed.2d 810, 824].)

gant or otherwise, as to the quality of services. Similarly in the case at bench the advertisements placed by Opti-Cal are simple statements communicating merely the name and location of the registered dispensing optician offices and designating the prices at which eyewear can be purchased. There was no communication suggesting either explicitly or implicitly what the quality of the eyewear might be.[7]

■ We therefore conclude by reason of the principles articulated in the *Va. Pharmacy Bd.* and *Bates* decisions (1) that the permanent injunction in the instant case was properly dissolved; (2) that the judgment of the trial court holding section 2556 and 651.3 constitutional must be reversed;[8] and (3) that Opti-Cal is entitled to declaratory relief determining that sections 2556 and 651.3, insofar as each purports to prohibit advertising of the stipulated price for furnishing a lens, lenses, glasses or frames and fittings or other commodities by a registered dispensing optician, are unconstitutional.

## II

Opti-Cal further contends that this court should order it exonerated from liability on the judgment of contempt issued by the trial court on

[7]We note that the trial court, after considering the extensive evidence introduced for the purpose of describing how the activities of registered dispensing opticians affected public health, entered the following finding: "The legislature may properly and rationally conclude that if price advertising were permitted in connection with furnishing prescription eyewear, it would cause registered dispensing opticians, physicians and surgeons and optometrists to engage in price competition to secure patients and customers. The legislature may properly and rationally conclude that if those licensed to furnish prescription eyewear engaged in price competition, it would result in a deterioration of the quality of the medical and health-related services they provide the public. [¶] The legislature may properly and rationally conclude that a deterioration in the quality of said services would cause serious physical damage to members of the public and other less serious medical symptoms and would also cause members of the public needlessly to suffer the consequences of defective vision resulting from improper fitting and adjusting of prescription eyewear." The cases relating to protection of commercial speech have not foreclosed considerations of quality, especially in the context of a service affecting public health. These decisions have, however, tended to limit the relevancy of quality considerations by striking down statutes containing comprehensive prohibitions on advertising.

[8]Although section 3129 was referred to throughout the pleadings when Opti-Cal during trial requested leave to amend its pleadings to include a cross-complaint for declaratory relief as to all three sections, the court entertained a motion by the Board to strike reference to section 3129. This latter motion was based on a representation by the Board and COA that neither sought to enforce section 3129 as against Opti-Cal. Although Opti-Cal's cross-complaint was not formally modified in this respect, the trial court's final judgment pertains only to sections 2556 and 651.3 and Opti-Cal has not raised the constitutionality of section 3129 on appeal.

March 12, 1976, for its violation of the preliminary injunction, and should also order the refund to Opti-Cal of the $2,000 fine which it paid upon the October 14, 1974, adjudication of contempt.

Opti-Cal did not challenge the 1974 contempt order and it has paid the fine. However, it filed a petition for writ of certiorari challenging the 1976 adjudication of contempt, wherein it was found guilty of 41 counts of violating the preliminary injunction and fined $20,500. On April 13, 1976, this court denied the petition and the California Supreme Court similarly denied it on May 13, 1976. The fine has not yet been paid and, insofar as appears from the record, no action has been taken to compel Opti-Cal to satisfy that judgment.

■ It is established law that "no one may be punished in contempt for the disobedience of a void order." (*Kreling* v. *Superior Court* (1941) 18 Cal.2d 884, 885 [118 P.2d 470].) Furthermore, "a person who has been held in contempt may collaterally attack the validity of the judgment and, if it is determined that the issuing court was without jurisdiction, or acted in excess of its jurisdiction, there is no basis for the order of contempt and punishment may not thereafter be imposed." (*Elysium, Inc.* v. *Superior Court* (1968) 266 Cal.App.2d 763, 765 [72 Cal.Rptr. 355].) We note that for the purpose of determining right to review by certiorari, restraint by prohibition, or dismissal of an action a broad meaning is given to the term "jurisdiction."[9]

Opti-Cal is entitled to be exonerated from the contempt adjudicated for violation of the preliminary injunction since the trial court properly dissolved the permanent injunction and we have reversed the trial court's original judgment as we herein conclude that sections 2556 and 651.3 are unconstitutional insofar as they prohibit price advertising by registered dispensing opticians.

■ However, no appeal may be taken from a judgment of contempt (Code Civ. Proc., §§ 1222 and 904.1, subd. (a)(2)) and the customary

[9]"Here it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) Accordingly, "An injunction based on an unconstitutional ordinance exceeds the issuing court's jurisdiction. [Citation.]" (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 507 [134 Cal.Rptr. 668, 556 P.2d 1119]) and cannot provide a basis for adjudging the respondent party (here Opti-Cal) in contempt.

method of attack is by motion or writ directed to the trial court in the first instance. Opti-Cal has presented to the trial court a motion to obtain exoneration of contempt and refund of the fine previously paid. Furthermore, we note that Opti-Cal has appealed solely from the April 26, 1976, judgment and issues relating to the contempt adjudication are not properly before this court.

## III

■   Finally Opti-Cal contends that it is entitled to damages to the extent of attorney's fees expended in its defense against the wrongful issuance of an injunction to prohibit its price advertising. ·

In its brief Opti-Cal concedes that a public entity and its employees are immune from liability for the wrongful issuance or enforcement of an injunction to compel compliance with an unconstitutional statute (Gov. Code, §§ 815.2, subd. (b), and 821.6). When the superior court issued the temporary restraining order and preliminary injunction, it did so upon application by the Board and consequently without bond (Code Civ. Proc., § 529). The right to recover damages caused by an improperly issued injunction on the mere showing that such damages were incurred is a statutory procedure provided in California as an action on the bond (Code Civ. Proc., §§ 529, 535). This statutory procedure, which provides for a separate trial against the surety, may be invoked after the decision on the injunction becomes final (*Allen* v. *Pitchess* (1973) 36 Cal.App.3d 321 [111 Cal.Rptr. 658]). The right to recovery is then limited in amount to the value of the bond (*Dickey* v. *Rosso* (1972) 23 Cal.App.3d 493, 498 [100 Cal.Rptr. 358]).

Opti-Cal nonetheless claims that in fact it was COA, a private corporation, which vigorously pursued enforcement of the injunction by means of contempt, and that COA is not protected by governmental immunity. The answer to this contention lies in the fact that Opti-Cal did not demand that COA post a bond as a condition of its intervention, nor did the trial court impose that condition. Consequently, there is available to Opti-Cal no action on the bond (Code Civ. Proc., § 535) and the remedy of Opti-Cal against COA, if any there be, lies in an independent action for abuse of process or malicious prosecution. (See *Dickey* v. *Rosso, supra,* 23 Cal.App.3d 493, 499.)

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court with instructions to undertake further proceedings consistent with the principles set forth in this opinion.

Wood, P. J., and Lillie, J., concurred.