[Civ. No. 16201. Third Dist. June 22, 1978.]

FREDERICK BARRY JACOBS, Plaintiff and Respondent, v.
STATE BOARD OF OPTOMETRY, Defendant and Appellant;
CALIFORNIA VISION SERVICE, Real Party in Interest and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, and William M. Goode, Deputy Attorney General, for Defendant and Appellant.

Wilke, Fleury, Hoffelt & Gray, Alan G. Perkins and Thomas G. Redmon for Real Party in Interest and Appellant.

Blease, Vanderlaan & Rothschild and John H. Metz for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—Defendant, the State Board of Optometry, a state agency charged with licensing of optometrists (board) and real party in interest, California Vision Service, a nonprofit corporation formed pursuant to Corporations Code section 9201 for the purpose of providing group vision care (CVS), both appeal from a judgment granting a peremptory writ of mandate and declaratory relief.

The writ commands the board "to compel" CVS to strike from its criteria for membership in its panel of participating optometrists all restrictions on advertising of the type allowed under certain provisions of the Business and Professions Code. The portion of the judgment granting declaratory relief decrees that the board "has the duty to supervise" CVS to insure that it complies with Corporations Code section 9201.

On appeal, the position of CVS is (a) that plaintiff is barred from relief due to failure to exhaust his administrative remedies and lack of an actual controversy; (b) that the trial court erred in its statutory interpretation of Corporations Code section 9201,[1] subdivision (b); and (c) that the trial court exceeded its jurisdiction in compelling the board to exercise its discretion in a particular manner.

[1]Corporations Code section 9201 reads as follows:
"A nonprofit corporation may be formed under this part for the purposes of defraying or assuming the cost of professional services of licentiates under any chapter of Division 2 (commencing with Section 500) of the Business and Professions Code or of rendering any such services, but it may not engage directly or indirectly in the performance of the corporate purposes or objects unless all of the following requirements are met:
"(a) At least one-fourth of all licentiates of the particular profession residing in

The position of the board on appeal is that the trial court erred in ordering it to compel CVS to strike its advertising criteria and to "supervise" CVS under Corporations Code section 9201, without providing some form of "specific guidance" from the court for the board to follow. In this connection, it is asserted by the board that the trial court erred in not making specific findings requested by the board and that this court should make such special findings on appeal.

Plaintiff is a licensed optometrist. CVS provides its services through contracts it negotiates with organizations such as labor unions, associations, fraternal groups and others.

About 85 to 95 percent of the group vision services provided by CVS to its beneficiaries is provided by the approximately 1,700 optometrists who are panel members of CVS. A nonpanel optometrist must bill the beneficiary who is then later reimbursed by CVS. CVS has specific criteria for panel membership. One of these is a prohibition against any advertising except as provided in the criteria. Paid "box ads" in telephone directories are prohibited. CVS beneficiaries, while not prevented from using nonpanel optometrists, are provided with a booklet containing only names of panel optometrists.

Plaintiff was and is ineligible for membership on the panel of CVS optometrists because he maintained a paid "box ad" in the telephone directory. Knowing he was ineligible, he had never applied for membership, although he desired to be a member. He had been informed by a representative of CVS that if he would take his ad out of the telephone book he would be eligible. Plaintiff testified he had lost business because of nonmembership in CVS.[2]

Prior to the filing of this action, a letter had been addressed to the board by counsel for an organization known as the Academy of

California become members.

"(b) Membership in the corporation and an opportunity to render professional services upon a uniform basis are available to all licensed members of the particular profession.

"(c) Voting by proxy and cumulative voting are prohibited.

"(d) A certificate is issued to the corporation by the particular professional board whose licentiates have become members, finding compliance with the requirements of subdivisions (a), (b), and (c).

"Any such nonprofit corporation shall be subject to supervision by the particular professional board under which its members are licensed and shall also be subject to Section 9505."

[2] CVS covers between 900,000 and 1 million people as beneficiaries.

California Optometrists (ACO) demanding the board require that CVS eliminate the "arbitrary criteria" it had imposed. The letter asserted the board should exercise its statutory duty under Corporations Code section 9201 to supervise CVS and to require CVS to permit participation in its program by all licensed California optometrists without regard to the arbitrary criteria. The board had taken no action in response to the letter and there are no regulations in effect supplementing Corporations Code section 9201. Neither ACO nor plaintiff has requested promulgation of any regulations. Plaintiff is a member and an officer of ACO, and the organization requested he file the instant action.

██ CVS contends the trial court ignored the fact that plaintiff failed to exhaust his administrative remedies and was therefore not entitled to either the writ of mandate or the declaratory relief sought and obtained. CVS argues that as a prerequisite to this lawsuit it was necessary for plaintiff to have petitioned the board, pursuant to Government Code section 11426, to adopt regulations to supplement Corporations Code section 9201, and that the trial court erred in not finding, as requested, that there was no such petition. We reject this contention and argument.

At the time this action arose, Government Code section 11426 provided, in pertinent part, that "any interested person may petition a state agency requesting the adoption or repeal of a regulation . . . ."[3] There is nothing mandatory about the statute. Neither is there any statute which *requires* the board to adopt formal regulations supplementing Corporations Code section 9201. ██ The rule relative to exhaustion of administrative remedies as a prerequisite to a civil action at law is premised upon the existence of a specific administrative remedy provided by statute. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715].) The mere possession by some official body, such as the board, of a "continuing supervisory or investigatory power" does not itself suffice to afford an administrative remedy. There must be "clearly defined machinery" for the submission, evaluation and resolution of complaints by aggrieved parties. (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 566 [55 Cal.Rptr. 505, 421 P.2d 697]; see also, *Eye Dog Foundation* v. *State Board of Guide Dogs For the Blind* (1967) 67 Cal.2d 536, 543 [63 Cal.Rptr. 21, 432 P.2d 717]; *Alta-Dena Dairy* v. *City of San Diego* (1969) 271 Cal.App.2d 66, 73 [76 Cal.Rptr. 510].)

---

[3]In 1977 the Legislature added the word "amendment" following "adoption" in the quoted language. (Stats. 1977, ch. 538, § 1.)

■ Moreover, even were there an administrative remedy to exhaust, the exhaustion requirement is excused where its pursuit would be futile, idle or useless. Thus, where an agency has made it clear what its ruling would be, idle pursuit of administrative remedies is not required. (See *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 499 [129 Cal.Rptr. 893].) ■ The record here discloses a letter from ACO demanding administrative action, as we have indicated above. The board replied in a manner making it plain that no action would be taken as requested.

CVS also contends the trial court erred in failing to find plaintiff had not applied for membership in CVS and that such failure barred him from a writ of mandate. There is no legal requirement that plaintiff formally apply for membership in CVS. It is clear that he would not be accepted, since the evidence shows he was ineligible, had been so informed by a representative of CVS, and was aware of his ineligibility from his own knowledge of the rules of CVS as to advertising. His testimony also was definite that he would not give up his advertising to become a member of CVS. The law does not require the performance of a useless or idle act as a procedural condition to seeking its aid in redressing a grievance. (Civ. Code, § 3532.)

■ In response to CVS' argument that plaintiff did not have a beneficial interest or show a potential interference with his rights, so as to justify the writ procedure, we need only point out that the evidence shows that plaintiff was prevented from becoming a member of CVS because of its allegedly wrongful criteria as to advertising, and as a result of not being a member he lost some business. This is an assertion and showing of sufficient beneficial interest in the criteria of CVS and the actions of the board with respect thereto to serve as a foundation for use of the writ procedure, since membership in CVS could have a significant economic effect on plaintiffs' professional career. (Cf. *Pinsker* v. *Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160, 166 [81 Cal.Rptr. 623, 460 P.2d 495].)

■ CVS contends declaratory relief was also an improper procedural remedy. It asserts no actual controversy existed. We disagree. Plaintiff alleged in his complaint that a controversy existed, by asserting the board had the general duty to supervise CVS and specifically to compel it to admit plaintiff to membership, whereas the board had refused to supervise CVS and to compel it to admit plaintiff or change its criteria. The board answered this portion of the complaint, not by denial, but by alleging it "did not know" whether a "controversy" existed but admitted

"at least a definite misunderstanding." Moreover, throughout briefs and arguments at trial the board took the position that it had no specific mandatory duties under Corporations Code section 9201 once it had certified a corporation such as CVS. Among the trial court's findings was one that an actual controversy existed between plaintiff and the board.

We conclude that plaintiff has shown he had a procedural right to the remedies of mandate and declaratory relief. It remains to be seen whether he had the substantive right to the relief given in the judgment.

■ The principal CVS contention is one which goes to the heart of the substantive issue of this case. It is the issue of the proper statutory construction of Corporations Code section 9201, and particularly the meaning of subdivision (b) thereof. It is provided in that subdivision that "Membership in the corporation [CVS] and an opportunity to render professional services upon a uniform basis are available to all licensed members of the particular profession." The trial court ruled that this language means *every* licensed optometrist must be allowed membership in CVS and that any restrictions, criteria or other conditions to membership are invalid which prohibit advertising of the type done by plaintiff, otherwise "allowed" by law.[4] CVS contends on appeal that the trial court erred in this interpretation of the statute. We agree with this contention.

■ Corporations Code section 9201 is a part of division 2, part 1, of the Corporations Code, relating to nonprofit corporations in general. Also contained in this part of the code is section 9402 which provides that nonprofit corporations may make provisions for the qualifications of members. ■ We must apply certain rules of statutory construction, including the rule that all statutes must be read together and harmonized whenever possible to ascertain the legislative intent. (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274, fn. 7 [118 Cal.Rptr. 249, 529 P.2d 1017].) It is presumed that the Legislature did not intend to act inconsistently on the same subject. (See 45 Cal.Jur.2d, Statutes, § 99, p. 613. ■ Moreover, a construction consistent with common sense and reasonableness is called for, and considerations of phraseology should be limited to the end that the purpose of the statute will not be sacrificed. (*Estate of Todd* (1941) 17 Cal.2d 270, 275 [109 P.2d 913]; *Select*

---

[4]Business and Professions Code sections 3104, 3129, 3130, expressly prohibit certain types of advertising by optometrists but do not prohibit the type done by plaintiff.

*Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

■ Under sound principles of statutory construction, it is a strained interpretation of section 9201, subdivision (b), and unreasonable to conclude, as did the trial court, that by enacting section 9201 the Legislature meant to abrogate the general statutory and common law principle that a nonprofit corporation or association can establish criteria for membership, so long as there is no violation of law in such criteria. It has been recently held by the Supreme Court that while a voluntary real estate association may not be forced to open its membership to all who apply, an unlawful restraint of trade could occur under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.) by an exclusion where membership was an "economic necessity" of doing real estate business. (See *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 928 [130 Cal.Rptr. 1, 549 P.2d 833].) However, it was not shown in the instant case that plaintiff had experienced anything like the 75 percent denial of employment which occurred in the *Marin* case. Restraint of trade is not an issue in this case. The only law which plaintiff asserts (and the trial court agreed) is violated is Corporations Code section 9201, subdivision (b).

We conclude that section 9201 is a statute which regulates the manner in which membership criteria are applied, rather than one which defines the full range of criteria which may be adopted. Thus, the statute requires the criteria be administered in such a way that membership in the corporation and the opportunity to render professional services be available in an equal manner to all licensed members of the profession. The modifying phrase "uniform basis" clearly applies both to "membership" as well as "opportunity to render professional services."

Were the trial court's interpretation (that "uniform basis" only modifies "opportunity to render professional services") allowed to stand, section 9201 corporations such as CVS would be crippled. Such corporations could not adopt criteria of membership other than to require a state license and could not provide for rules of professional quality or professional standards such as were recognized as generally lawful for nonprofit medical societies or associations by the Supreme Court in *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 560 [116 Cal.Rptr. 245, 526 P.2d 253].)

In summary, it is our conclusion that when sections 9201, subdivision (b), and 9402 are read together, CVS may provide for admission and expulsion of members, as long as the criteria are uniformly applied to prospective members and membership is open to all licensed optometrists who must conform to certain requirements in exchange for the benefits of membership. CVS' criteria are reasonably intended to maintain the professional standing of its members, prevent unfair competition, and prevent possibly misleading and unprofessional advertising. Compliance with the criteria is a reasonable exchange for the benefits of membership in CVS.

Having so concluded, we find the trial court erred in rendering judgment ordering a writ of mandate to issue commanding the board to compel CVS to strike its criteria for panel membership restricting advertising of the type not prohibited under Business and Professions Code sections 3104, 3129 and 3130. That portion of the judgment must be reversed.

 In addition to the above portion of the judgment, the trial court ordered and decreed the board had the duty to supervise CVS under Corporations Code section 9201 "which includes the duty to insure that [CVS] complies with the provisions of section 9201 of the Corporations Code." Although couched in declaratory terms, this portion of the judgment read in context, is a mandate. It is true that Corporations Code section 9201 specifically provides that a nonprofit corporation such as CVS, licensed by the board, "shall be subject to supervision by the [board]." CVS contends this language does not impose any mandatory *duty* of law enforcement on the board, so that the trial court erred when it concluded the code section made supervision (in the enforcement sense) a ministerial act which could be declared and mandated. (Cf. *People* v. *Brophy* (1942) 49 Cal.App.2d 15, 27-28 [120 P.2d 946], holding "supervision" of district attorneys by the Attorney General did not mean "control.") Even if the board could be said to have "control" or enforcement duties in the sense of somehow "insuring compliance" as the trial court determined, such control or supervisory power could only manifest itself by the exercise of discretion. The statute says "subject to supervision." We deem it most significant that the Legislature did not choose to say the board "shall supervise." (Cf. *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 196, fn. 10 [81 Cal.Rptr. 683].) Since an exercise of discretion on the part of the board as to whether, when and how to exercise its general power of supervision is involved, that portion of the judgment which purports to *order* the board "to supervise" CVS to

"insure" its compliance with section 9201, must also be reversed. ■ *Exercise* of discretion may be ordered or mandated, but exercise in a *particular manner* may not. (See 5 Witkin, Cal. Procedure (2d ed. 1971), Extraordinary Writs, § 75, p. 3851.)

■ The board contends the trial court erred in neglecting or refusing to make the special findings requested by it to fix precisely its responsibilities and the "parameters of its authority over a corporation organized under Corporations Code section 9201." Since we have decided the judgment must be reversed, any action we would take on the board's contention cannot have a practical legal effect upon the disposition of this case, and the contention has accordingly been rendered moot, by definition. (See Black's Law Dict. (4th ed. 1968), p. 1159; 27A Words and Phrases, pp. 155-158.) Moreover, as we have pointed out above, the most a trial court could properly do, would be to order general exercise of discretion, not specific acts in a particular manner. Hence any "guidelines" as requested by the board, or directives by the trial court as to the boundaries, limits or "parameters" of its authority under section 9201 would be neither proper nor within the judicially cognizable issues of this lawsuit.

What we have said disposes also of the board's second contention on appeal, which is that this appellate court should now make "special findings" of the type requested by the board in the trial court. Rule 23 of the California Rules of Court is not a vehicle for such purpose. It provides for the taking of evidence and the making of factual findings. We are being asked, in part, to make conclusions of law. Moreover, we can conceive of no useful or pertinent additional evidence to be presented. Even purely factfinding under rule 23 is an extraordinary procedure to be used sparingly and only in a case clearly calling for it, which this case clearly does not. (See *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 13 [106 Cal.Rptr. 761, 507 P.2d 65].)

The judgment is reversed.[5]

Puglia, P. J., concurred.

---

[5]The motion of CVS filed March 21, 1977, to take judicial notice of the "Notice of Intended Decision" of Judge Schreck in Sacramento Superior Court case No. 211535 has been under submission. It is hereby granted, and this court has in fact taken judicial notice of the superior court document in question pursuant to Evidence Code section 452.

**REYNOSO, J.**—I dissent. Plaintiff has been deprived of his First Amendment right to advertise.

There appears to be no dispute that plaintiff is being discriminated against by CVS based solely on his exercise of his First Amendment right. It is not surprising that a "private corporation" whose members are a part of the optometrical profession would seek to discourage advertising by members. Private discrimination, however, is not unconstitutional. (*Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163 [32 L.Ed.2d 627, 92 S.Ct. 1695].) The narrow issue is whether the discrimination engaged in by CVS may be characterized as an action by the state. I conclude that it can and that unconstitutional state action is present.

The involvement by the state in this case is two-fold. First, the state is responsible for the policy prohibiting advertising by professionals, including optometrists. Second, the state agency (board) whose task it is to supervise CVS in order to assure compliance with the provisions of Corporations Code section 9201, has failed to act to compel CVS to do away with its membership criteria. That action, the lack of supervision, has had the result of infringing the constitutional rights of optometrists and consumers. (See *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817].)

The state action is seen in the legislative scheme which prohibits certain types of advertising by optometrists. (Bus. & Prof. Code, §§ 3104, 3129, 3130.) The scheme (or policy), I emphasize, is legislative and not private. The policy is not limited to optometrists. In historical fact, the state for many years has prohibited advertising by numerous professional groups. (See e.g., Bus. & Prof. Code, §§ 651.3, 1680, 2556, 3020; see also rule 2-101, Rules Prof. Conduct of State Bar.) Thus, CVS is merely prescribing a standard of conduct for its member-optometrists consonant with the state's policy. That policy, however, recently has been deemed impermissible. Advertising by professionals, like that involved in this case, is now regarded as constitutionally protected speech. (See *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691].) California statutes prohibiting advertising by optometrists were declared unconstitutional. (*Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc.* (1977) 73 Cal.App.3d 376, 387 [140 Cal.Rptr. 757]; Bus. & Prof. Code, §§ 651.3, 2556.)

The statutory history shows that the impetus for the discriminatory membership criteria imposed comes from that long-standing state policy

prohibiting advertising by professionals, such as optometrists. The United States Supreme Court stated: "[W]here the impetus for the discrimination is private, the State must have 'significantly involved itself . . .' to fall within the ambit of the constitutional prohibition." (*Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. at p. 173 [32 L.Ed.2d at p. 637].) However, as I have noted, the impetus for the discrimination here is with the state itself. Accordingly, it is not necessary to find the "significant involvement" by the state to find state action. The United States Supreme Court has not articulated what lesser degree of involvement constitutes state action. I am convinced that the historical impetus provided by the state and its continuing supervisorial duties may suffice.

I have discussed the historical impetus. I turn to the supervisorial duties. The State Board of Pharmacy is mandated by section 9201 in unambiguous terms to assure that "[m]embership in the corporation . . . [is] available to *all* licensed members of the . . . profession." (Corp. Code, § 9201, subd. (b); italics added.)[1]

---

[1]The majority, like the parties, have focused on the statutory interpretation of Corporations Code section 9201. The critical issues presented by this case, the impact on many California consumers, has thereby been ignored. Those interests have not been presented despite the participation in this litigation of the State Board of Optometry, a division of the Department of Consumer Affairs.

We deal with a nonprofit corporation that provides group vision service to nearly 1 million California consumers. Yet it withholds membership from optometrists who choose to advertise their services. The trial court, by a different route, reached the correct decision respecting the legislative scheme. The Legislature has determined that it is in the best interest of our economy and thus ultimately for consumers, that competition be encouraged. Any conduct which has the effect of restraining this competition shall be unlawful. (Bus. & Prof. Code, § 16720 et seq. (Cartwright Act). CVS is subject to the Cartwright Act. (Cf. *California Physicians' Service* v. *Garrison* (1946) 28 Cal.2d 790 [172 P.2d 4, 167 A.L.R. 306], with *Manasen* v. *California Dental Services* (N.D.Cal. 1976) 424 F.Supp. 657.) The state has specifically authorized the type of advertising which plaintiff has utilized since he only advertises his location and not his price. (Bus. & Prof. Code, § 3129.) The membership criteria has the effect of reducing competition among optometrists by reducing the flow of information to the consumers. (See *Terminal-Hudson Electronics* v. *Dept. of Con. Aff.* (C.D.Cal. 1976) 407 F.Supp. 1075, 1082 (infringement of First Amendment resulted in "flagrant anti-competition.") This evil flows from the actions of CVS and from the failure of the State Board of Optometry to supervise CVS as it is required to do by statute. (See Corp. Code, § 9201.)

I disagree with the majority's summary conclusion that *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920 [130 Cal.Rptr. 1, 549 P.2d 833], does not apply. *Palsson* involved a membership criteria set up by a board of realtors which excluded from membership a realtor because he was not primarily engaged in the real estate business. (*Id.,* at p. 924.) As a result of this exclusion, the realtor was not permitted access to the board's multiple listing service, which resulted in serious economic consequences to the realtor and a reduced ability for him to serve his clients. The court held the membership criteria to be in violation of the Cartwright Act. In the case before us, we have a similar exclusion from membership, except that here it is on the basis of an optometrist's act of advertising. It appears to me that both of the concerns expressed by the California

In *Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627], the United States Supreme Court ruled that Proposition 14, which had the intent of overturning state laws that bore on the right of private sellers and lessors to discriminate, was unconstitutional because, while neutral on its face, the law had the effect of encouraging private discrimination. The events which led to the passage of the initiative as well as the "milieu in which that provision would operate," convinced the court of its non-neutral effect. (387 U.S. at p. 378 [18 L.Ed.2d at pp. 836-837].) Here, no statute is being attacked. The act of discrimination is not one done directly by the state. It is a private nonprofit corporation that is the actor. Nonetheless, this private act is the result of encouragement by state government. Unlike the situation in *Reitman*, the state has not remained "neutral." Rather, by not fulfilling the mandate of section 9201, the state has achieved its public policy opposing advertising by optometrists, albeit indirectly through CVS.

Irrespective of the motives of CVS or the State Board of Optometry, the effect of this membership criteria is twofold: (1) it limits the exercise of First Amendment rights by optometrists who desire the economically beneficial association with CVS, and (2) it deprives all California consumers of the benefit of this advertising. The evils present in *Reitman* are present.

I would affirm the judgment of the trial court. Its conclusion that the statutory scheme proscribes discrimination against plaintiff is correct. Further, the Constitution, too, proscribes such discrimination.

---

Supreme Court in *Palsson* are present in this case. The expressed concerns were (1) the practitioner must suffer from economic harm, and (2) the consumer must be inconvenienced. First, there is evidence in the record that one optometrist lost approximately $15,000 in one year's earnings as a direct result of losing her association with CVS. Second, a consumer who is a member of CVS must either visit an optometrist who is a member of CVS or pay the fees of a non-CVS optometrist (and later seek reimbursement from CVS).

While this case was not tried under the Cartwright Act, and consequently no evidence bore directly on Cartwright concerns, the trial court correctly analyzed the obligation of the State Board of Optometry and its failure to protect the public. Sufficient evidence appears in the record to support the judgment.