[Civ. No. 10126. Second Appellate District, Division Two.—August 5, 1935.]

J. E. KOEBERLE, Respondent, v. MINNA K. HOTCH-KISS et al., Appellants.

Frank P. Doherty, William R. Gallagher and Harold Hotchkiss for Appellants.

Stewart, Shaw & Murphey and Arvin B. Shaw, Jr., for Respondent.

CRAIL, J.—This is an appeal from a judgment for $28,808.20 in favor of the plaintiff based on the written agreement of the defendants to pay the plaintiff 10 per cent of any and all royalties when and as received by the defendants from an oil lease covering a tract of 10 acres on Signal Hill, which the plaintiff in the year 1921 was instrumental in procuring for the defendants with the General Petroleum Corporation, as lessee.

Taking the evidence in the light most favorable to the respondent, which it is our duty to do where the contention is made that the evidence is insufficient, it appears that the defendants entered into the contract in 1921 and thereafter paid 10 per cent of their royalties to the plaintiff for several years; that the royalties amounted to very large sums so that even the 10 per cent of the royalties was large. The defendants finally gave notice to the lessee, a third party not involved in this litigation, that the lease was canceled. The lease was not thus canceled because the lessee was not in default and the lessee persisted in continuing under the lease. Thereupon the defendants refused to receive the royalties and the lessee deposited the royalties from month to month in a bank in the name of the defendants under section 1500 of the Civil Code and continued to occupy the land and to produce oil under the lease. This went on for a considerable period of time while the defendants were litigating with the oil company for a cancellation of the lease. This money on deposit in the name of the defendants was increased by the accretion of interest at the small current rate on such deposits, in an additional sum of $14,274.28. During all the time that this money was being deposited in the bank as a tender of the royalties due under the lease the defendants were free to withdraw it at their option. But they did not withdraw it and they did not pay the plaintiff his 10 per cent thereof.

The litigation with the oil company dragged along for several years until August 23, 1932, when the parties thereto compromised the same. Under the terms of the compromise the defendants acknowledged full performance upon the part of the oil company of all the terms and conditions of the lease. It was also stipulated that the money in the bank might be withdrawn by the defendants at any time they might elect to do so. The character of the deposits in the bank was not altered in any manner by the compromise agreement. That instrument merely reaffirmed the right, which defendants already had, to draw the money at any time they might elect to do so. But after drawing out the said royalties the defendants refused to pay the plaintiff his 10 per cent thereof upon the alleged ground that said moneys were not royalties but were deposits in a bank which were obtained by way of compromise of the lawsuit rather than as royalties. Hence this litigation.

The defendants' opening brief covers 188 pages. In addition it has a supplement, setting forth certain exhibits. The reporter's transcript is in four volumes. We have read the briefs carefully from cover to cover and parts of them several times, as is our custom in all cases, and we have given a fair and reasonable study to the transcripts here necessary, and we have come to the conclusion that there is nothing unusual in this case which distinguishes it from the ordinary action upon a written contract for the payment of money except the extraordinary zeal and eloquence of the defendants both at the trial and upon appeal.

The defendants first contend that the evidence is insufficient to warrant or sustain the verdict with regard to certain findings of fact implied by the verdict of the jury. And so far as this contention is concerned the appellants attempt on appeal to try the case *de novo*. Much of the evidence which the defendants set out in their briefs and upon which they rely to sustain their contentions is flatly contradicted by the testimony of the plaintiff's witnesses, and no credit is given or reference made to the plaintiff's testimony in this regard. The defendants' evidence, where it conflicted with the plaintiff's evidence, did not convince the jury. No effort is made by the defendants to show *all* the evidence relative to their contentions. We shall not be drawn into a

discussion of the weight of the evidence. We shall content ourselves with saying that there is substantial evidence to sustain the implied findings of the jury.

We purposely refrain in this case, as in other cases, from setting forth the facts and circumstances upon which we rely for our decision that there is substantial evidence to sustain the findings of the trial court. Such a recital is not required by the constitutional mandate which directs that all decisions of this court shall be given in writing and the grounds of the decision shall be stated. To thresh through a reporter's transcript, and to then determine whether or not there is any substantial evidence, requires no more skill than to thresh through a transcript and determine on which side lies the greater weight of evidence. The threshing of evidence for either of these purposes is essentially the same task of finding and weighing evidence, requiring skill of the same kind and degree, and is primarily a task for the trial court. It required a somewhat lively imagination the first time an appellate court declared that the search for and the determination whether there was any evidence to support a finding was the determination of a question of law. Thereafter the doctrine of scintilla of evidence was rejected in California for the doctrine of substantial evidence. (*Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267], and cases cited.) For a time there was a tendency to overlook the fiction that it was a question of law and not of fact. Thus in the *Estate of Wikman,* 148 Cal. 642 [84 Pac. 212], we find the following language used: "This is a question of fact, and must be sustained if there is any *reasonable amount* of evidence supporting it." (To the same effect see *McCarthy* v. *McColgan,* 99 Cal. App. 492 [278 Pac. 918].) We are not approving this quotation. The word "reasonable" ordinarily involves a question for a fact finder. We are attempting to point out how nearly this so-called "question of law" approaches to being a question of fact. All of this is in line with the thesis of this paragraph that this court purposely refrains from setting out the facts and circumstances in evidence upon which it bases its statement that there is substantial evidence to support the implied findings of the jury. The defendants are entitled to this explanation because of the length and eloquence of their briefs.

It is sometimes said by litigants that such recitals of facts and circumstances should be set out for the convenience of the Supreme Court in the event a hearing is granted in that court. But hearings in the Supreme Court are granted in only a small fraction of the cases which have been decided by the District Court of Appeal. Such a recitation of the evidence makes the same a part of the case law, much to the confusion of professors in law schools, their pupils and others. Such practice takes time and makes for long opinions when brevity in opinions is demanded as a cardinal virtue second only to clearness. When reviewing a decision of the District Court of Appeal the Supreme Court will ordinarily take as true the facts as set forth in the opinion. With equal propriety, we believe, the Supreme Court, after the trial court has first decided this question and after this court has reviewed the evidence and again decided it, will ordinarily take as true our statement that we do or do not find substantial evidence in the record. We are satisfied that in the rare instances in which it would not so take our statement, the high court would eventually go, in any event, to the record itself.

The defendants next contend that "the court committed prejudicial error in giving its instructions and in refusing to give certain instructions requested by appellants and in modifying and in giving as modified certain instructions requested by appellants". We have carefully studied the instructions given by the court. Taking the instructions as a whole, the jury was fairly and fully instructed upon the issues of the case. And also the instructions fairly covered the defendants' theories of the case where such theories found support in the evidence. Where the court instructed the jury on matters of fact, the facts therein assumed were undisputed in the evidence and uncontested. Among the instructions which were refused, those which were not erroneous were fully covered elsewhere. Several of the instructions were "formula" instructions, which a trial court should always hesitate to give. One of these instructions covers six pages of the printed supplement. In addition to being incomplete as a formula instruction, it is argumentative throughout, and is an excellent model of what an instruction should not be. Instead of being unfairly treated in the instructions, the defendants received the benefits of instructions as to al-

leged oral promises of the plaintiff and as to defendants' theory of the Real Estate Brokers' Act, to neither of which they were entitled.

■ There is much evidence in the record about alleged oral agreements made by the plaintiff to the defendants to continue during the life of the lease to look after the defendants' interests in the lease, and the defendants complain of certain instructions because they do not *fully* set out the defendants' theory in this regard. The evidence as to these alleged oral promises by which it was attempted to change the written agreement was not admissible under the parol evidence rule. See the case of *Koeberle* v. *Hotchkiss,* 4 Cal. App. (2d) 252 [40 Pac. (2d) 911], which is a suit between the same parties, where the same contract was involved, and where the same question was raised.

■ Defendants next contend that "one co-tenant, merely by acts and conduct, cannot bind the other co-tenant in the absence of express authority", and complain of one instruction because they say it permitted the jury so to do. That was not the import of the instruction, however. The import of the instruction was that one cotenant could by her acts and conduct indicating that her other cotenant was her agent, bind *herself* so that notice to her cotenant was notice to her.

■ The defendants' final contention is that the plaintiff was barred from maintaining this action by his failure to plead and prove that he was a duly licensed real estate broker in the year 1932. (Real Estate Brokers' Act, Stats. 1919, p. 1252.) Section 20 of said act provides in effect that no person acting in the capacity of a real estate broker shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in section 2 of the act without alleging and proving that such person was a duly licensed real estate broker at the time the alleged cause of action arose. The primary purpose of the Real Estate Brokers' Act was to require real estate brokers and salesmen to be "honest, truthful and of good reputation". (*Riley* v. *Chambers,* 181 Cal. 589 [185 Pac. 855, 8 A. L. R. 418].) The act was designed to protect the public. Where, as in this case, there is a written agreement to pay sums of money to the plaintiff, his heirs, assigns, executors, etc., and the services as real estate broker were fully performed and completed in the year 1921

during all of which year the plaintiff was duly licensed, and no other services as real estate broker were or are to be performed, it cannot be held that the payee of the contract cannot recover and his assigns and executors, if any, cannot recover because he or they have failed to obtain licenses each year through the succeeding years. Suppose a promissory note payable in 1932 had been given in 1921 in payment for the services, could defendants' contention be successfully maintained as a defense to an action brought by the plaintiff upon said note? ▇ Likewise the cause of action herein which arose eleven years after all the services were completed must be held to have arisen out of the breach of the written promise to pay. As such it is not within the purview of said act. See *Koeberle* v. *Hotchkiss, supra,* in which the identical question between the same parties was decided adversely to the defendants.

Unfortunately for appellants, but fortunately for the true and successful administration of justice, the jury was able to see through the shallow claim that the identical money on deposit in the bank was by the magic of the compromise agreement transformed into something other than royalties and did not permit the defendants to evade payment under the terms of their written agreement.

For the reasons above stated there is also no merit in the defendants' motion for a new trial.

Judgment affirmed.

Fricke, J., *pro tem.,* concurred.

STEPHENS, P. J., Concurring.—I concur. In concurring I deem it proper to say that credit for those parts of the opinion that treat of our duty in the matter of statement of fact belongs wholly to Mr. Justice Crail.

Comment upon the subject is justified by the constant assumption in petitions for rehearing that it is our duty to include detailed recitation of facts in our opinions. A short, concise opinion upon the law points presented by the facts, it seems, is very popular except, in some instances, with the lawyer whose case has thus been handled. If lawyers would carefully read the opinion in *People* v. *Davis,* 147 Cal. 346 [81 Pac. 718], and the Supreme Court's comment upon deny-

ing a hearing in *Burke* v. *Maze*, 10 Cal. App. 206, at page 211 [101 Pac. 438], many pages in appellate briefs and petitions for rehearings and hearings before the Supreme Court would be saved, for the uselessness of pages of facts in opinions is therein plainly indicated. In offering such free advice to attorneys I must confess that I harbor the thought that the authorities herein mentioned could as well be perused with profit, every now and then, by justices of reviewing courts.