[Civ. No. 5924.   Fourth Dist.   Jan. 28, 1959.]

CLARA FERGUSON, Respondent, v. H. SCHUENEMANN, Appellant.

414

Swing & Swing for Appellant.

Wilson & Wilson for Respondent.

SHEPARD, J.—This is an action in which plaintiff seeks to establish her equitable interest in certain real and personal property, acquired during the time that she and defendant Schuenemann (who will hereinafter be referred to as defendant) were living together as husband and wife and had agreed to pool their interests in income and property.

After a nine-day trial and voluminous evidence and arguments of counsel, the court found in general substance that in October, 1948, plaintiff and defendant agreed to pool and share equally their income, expenses and property accumulations; that said parties did so pool their earnings and share equally any expense and acquisition of property from said October, 1948, continuously until March 1, 1955; that they accumulated certain real and personal property during said period of time as is specifically described in the findings and judgment; that certain other defendants, who have not appealed, are entitled to specified reimbursements for beneficial expenditures on one of the parcels of property; that plaintiff is an equal owner with defendant of the property described; for a money judgment to adjust the division

of certain monies; and for a certain monthly stipend while plaintiff is held out of possession of certain property. Judgment was entered for plaintiff accordingly, and defendant appeals.

██ Defendant's first complaint is that the evidence is insufficient to support the finding that plaintiff had an oral agreement to engage in the real estate business and share equally in the earnings thereof. While defense counsel recognized the rule that on appeal an appellate court has "no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom" (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757], he nevertheless contends that the whole record does not present substantial evidence to support the finding.

Neither party has attempted to give this court any overall résumé of the evidence, but we have nevertheless reviewed the transcript to discover whether or not defendant's assertion has any foundation. In the interest of brevity we refrain from attempting any great detail, but it does appear clearly from defendant's own testimony that plaintiff and defendant, late in 1947, assumed what is ordinarily called the relationship of common law husband and wife and lived together in that relationship until about February, 1955; that they took some of the property in their names as husband and wife, bought and sold, executed deeds of trust and notes, and borrowed money representing themselves to public institutions and in many business transactions as husband and wife. Plaintiff made direct contributions as to some of the property. For most of this period she held a real estate salesman's license, which defendant assisted her to obtain, and worked with defendant in the real estate business as a licensed saleswoman. All of this testimony and other testimony of the defendant amply corroborates the testimony of the plaintiff that from the time they first started living together in the Clifton Hotel in October, 1947, they shared expenses and he used her car; that about the time they first started living together they had a conversation in which each agreed to share equally any earnings and expenses; that when they first joined hands she was making $60 to $75 per week as a beauty operator; that through the years she cooked and scrubbed and maintained the home, kept the garden, did secretarial work at the office, shared her own car for all the needs of the

business, went on listing tours, acted as hostess to patrons who came to purchase property, advised and consulted with defendant on the house construction, improvement and furnishings, and did actual sales work during the five or six years she held a license.

Other witnesses testified in corroboration as to various of these matters. For example, one witness testified that when a client protested about defendant taking over the closure of a real estate transaction which plaintiff worked up, defendant in reply to said protest stated that the real estate commissions earned by plaintiff and defendant were "all in the family."

In our opinion, the sum total of the evidence amply warrants the conclusion that the parties had agreed to and, during the years they lived together, did operate under an agreement that all expenses, income and acquisitions of both of them would be shared equally, including the real estate business.

Such agreements have received recognition from California courts throughout the state's history. (*Cline* v. *Festersen,* 128 Cal.App.2d 380 [275 P.2d 149]; *Garcia* v. *Venegas,* 106 Cal.App.2d 364 [235 P.2d 89].) What we have hereinbefore said concludes further discussion of defendant's second and third points, in which he also challenges the general sufficiency of the evidence to support the court's conclusion as to what was done as well as what was agreed upon.

By defendant's fourth objection he would appear to be questioning the breadth or inclusiveness of the words in plaintiff's pleading "share equally in their joint accumulations," contending that such words are insufficient as a basic support for the court's finding that the parties agreed to share in the real estate business "as well as moneys derived from any sources other than said business." Counsel has not called to our attention by his brief, and we have been unable to discover any evidence of identifiable property belonging to or held by defendant prior to the commencement of the parties' relationship, or of property received by gift, devise or inheritance. The only property specifically identified in the evidence as having previously been owned by one of the parties was the automobile of plaintiff. If there was other property, it appears to have been so merged in the common property that it can no longer be traced. There was some testimony that defendant was at one time in the "surplus" business, but nothing to show whether he was a clerk or ac-

tually owned something, or if so how much. The record, as we see it, gives no comfort on this score to defendant.

Defendant's next contention is that such an agreement would be void as in violation of the California statutes and regulations relating to licensing of real estate brokers and salesmen, and he cites in support of that contention the cases of *California Emp. Stab. Com.* v. *Morris,* 28 Cal.2d 812 [172 P.2d 497], which relates to unemployment insurance liability for an employee salesman who was paid solely by commission; *Riley* v. *Chambers,* 181 Cal. 589 [185 P. 855, 8 A.L.R. 418], which relates to the validity of the Real Estate Broker's License Act of 1919; *Gray* v. *Horne,* 48 Cal.App.2d 372 [119 P.2d 779], which relates only to whether or not a real estate broker's license is required for refinancing and refunding services, marshalling, reduction and compromise of debts; *Koeberle* v. *Hotchkiss,* 8 Cal.App.2d 634 [48 P.2d 104], in which payment to a real estate broker for prior services was being accomplished through an agreement to pay a percentage of oil royalties; and *Wilson* v. *Stearns,* 123 Cal.App.2d 472 [267 P.2d 59], relating to the effect of failure to fix a definite termination date on the realty broker's right to collect a commission.

As was said in *Wilson* v. *Stearns, supra,* 480 [5]:

"In determining whether a contract is invalid the courts should strive to deal with the transaction so as to give effect to the fundamental purpose of the Legislature and to a wise public policy."

In our opinion, the law relating to licensing of real estate brokers has as its purpose the protection of the buying and selling public, and was not intended to invalidate any over-all agreement between people acting in the relationship here at bar. Furthermore, during the vast majority of the time involved plaintiff held a license as a salesman. We can find nothing in the act which prohibits a broker and salesman working together and dividing the commission, but even if there was we still think it would not apply to the type of situation we have at bar.

Defendant complains of the admission of certain evidence apparently intended to indicate the affection borne by defendant toward plaintiff during the period of time involved. Such evidence might well have been deemed unnecessary, but it had at least some corroborative value in showing the intent of the defendant in his dealings with the plaintiff.

We cannot say that it was either harmful or improper. It is certainly a very natural and honorable thing for a man to divide with a woman for whom he held a strong affection the accumulations arising under a situation of this kind, especially where it appears that the woman involved was, during the whole period, working with constant industry on behalf of both of them. In our opinion, the case was fairly tried and fairly decided.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied February 27, 1959, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1959.