[Civ. No. 54049. Second Dist., Div. One. May 11, 1979.]

RAYMOND JOHN ANDERSON, Plaintiff and Respondent, v.
DEPARTMENT OF REAL ESTATE et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, Arthur C. de Goede, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Defendants and Appellants.

Friedman & Warner, Daniel Friedman, Lascher & Wilner, Edward L. Lascher, Wendy Cole Wilner and Robert N. Alt, Jr., for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—This appeal is from a judgment in administrative mandate (Code Civ. Proc., § 1094.5) which overturns a decision of appellant Department of Real Estate. In addition to issues of applicability of and statutory authority for the department's regulation 2850 (Cal. Admin. Code, tit. 10, art. 17, § 2850) requiring licensure of "advance fee rental agents" as defined in the regulation, the case at bench raises an apparently novel issue of the validity of the regulation in light of First Amendment protection of commercial speech.

We conclude that the regulation is authorized by statute and that it covers respondent's activity. We conclude also, however, that as applied by the department to respondent's activity, the key statute and regulation infringe upon respondent's right to freedom of commercial speech by imposing overly restrictive requirements for licensure. Accordingly, we affirm the action of the trial court which annuls a department determination revoking respondent's inactive real estate license for violation of the licensure requirement.

*Facts*

As required in judicial review of administrative action affecting a fundamental vested right (here the revocation of a real estate broker's license), the trial court applied the independent judgment test in determining the applicable facts. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) Because neither the department nor respondent challenge the findings of fact of the trial court, we summarize the facts as recorded in the findings.

Raymond John Anderson, doing business as Homefinders and Homefinder's Guide, was licensed as a real estate broker by the Department of Real Estate. Effective July 7, 1975, Anderson caused his license to be placed on inactive status.

In the period from July 7, 1975 through February 29, 1976, Anderson conducted a business under the name of Homefinders in which he obtained information from landlords and newspaper advertising respecting residential property that was available for rent and compiled the information into a list of available rentals which he sold to clients for a subscription price. In four separate instances, people who answered Homefinders' newspaper ads offering houses for rent contacted Homefinders and were solicited to come to a Homefinders' office where each would be provided with rental information if he became a subscriber to the Homefinders' service for the prescribed fee.

Three of the four people so solicited after answering a Homefinders' ad paid subscription fees of $25 or $30. Each of them received a list of rental properties and a "rental information contract." There were some inaccuracies in the compilation. None of the three or four persons succeeded in arranging a rental of property from the lists furnished. In two of the instances, the registration fee was not refunded upon request.

In the third, it was. Homefinders was not the owner of any of the properties listed as available for rent by it.

Concluding that Anderson's activity violated its regulation governing the conduct of "advance fee rental agents" because it was conducted without the imprimatur of an active real estate license, the department instituted disciplinary proceedings against him. After a hearing, the department found the charges to be true and revoked Anderson's inactive real estate license.

On judicial review of the administrative action, the trial court found the facts as recited but concluded that the conduct was not a cause for discipline. It entered its judgment in the form of a peremptory writ ordering the department to annul its action revoking Anderson's license.

## Regulatory Scheme

The Real Estate Commissioner is empowered to control the issuance of licenses to real estate brokers and real estate salesmen. Applicants for either license may be required to establish their honesty and truthfulness and must pass an examination. (Bus. & Prof. Code, §§ 10152, 10153, 10153.7.) They are examined on "[a]ppropriate knowledge of the English language, including reading, writing and spelling and of arithmetical computations common to real estate and business opportunity practices. [¶] An understanding of the principles of real estate and business opportunity conveyancing, the general purposes and general legal effect of agency contracts, deposit receipts, deeds, mortgages, deeds of trust, chattel mortgages, bills of sale, land contracts of sale and leases, and of the principles of business and land economics and appraisals. [¶] A general and fair understanding of the obligations between principal and agent . . . and the cannons [sic] of business ethics pertaining [to real estate and business opportunity practice]." (Bus. & Prof. Code, § 10153.)

It is unlawful for any person to engage in conduct requiring a real estate broker's or salesman's license unless he is licensed. (Bus. & Prof. Code, § 10130.) In 1961, the traditional definition of activity of a real estate broker was broadened. Section 10131.2 was added to the Business and Professions Code stating: "A real estate broker . . . is also a person who engages in the business of claiming, demanding, charging, receiving, collecting or contracting for the collection of an advance fee in connection with any employment undertaken to promote the sale or lease of real property . . . by advance fee listing, advertisement or other

offering to sell, lease, exchange or rent property . . . or to obtain a loan or loans thereon." Read with the provisions of Business and Professions Code section 10131, subdivision (b), which defines a broker's activities to include solicitation "of places for rent, or . . . for prospective tenants," section 10131.2 covers the activity of an "advance fee rental agent," i.e., a person who "furnishes rental information to prospective tenants whereby they are obligated to pay a fee in advance of services whether or not a rental is obtained . . . ." (Cal. Admin. Code, tit. 10, art. 17, § 2850; Review of Selected 1965 Code Legislation (Cont.Ed.Bar 1965) p. 14.)[1] The commissioner's regulations provide that, "No real estate salesman shall act as an 'advance fee rental agent' unless the salesman's employing broker . . . is actively engaged in the real estate or rental business at the same office . . . ." (Cal. Admin. Code, tit. 10, art. 17, § 2851.)

 Anderson's conduct meets the test of an "advance fee rental agent." (*Rees* v. *Department of Real Estate* (1977) 76 Cal.App.3d 286, 294 [142 Cal.Rptr. 789].) If, therefore, the regulatory scheme satisfies constitutional standards as applied to Anderson's activity, the department properly imposed discipline upon him for acting without an active license. We thus turn to analysis of the constitutionality of the regulatory scheme as applied in the case at bar.

*Constitutionality of Regulatory Scheme*

The regulatory scheme applicable to "advance fee rental agents" engaging in activity similar to Anderson's has previously been held not to violate the constitutional guarantees of procedural due process and equal protection. (*Rees* v. *Department of Real Estate, supra,* 76 Cal.App.3d at pp. 298-301.) Anderson mounts an attack upon the scheme not previously considered. ██ He claims the · statutes as construed by the regulations constitute an unconstitutional infringement upon his freedom of commercial speech if applied to his activity in distributing lists of available rentals for a fee.[2] That claim has merit.

[1]"Senate Bill 269 [Stats. 1965, ch. 172, pp. 1134-1135] . . . clarifies that furnishing of lists of rental vacancies to prospective tenants for compensation is an act for which a real estate rental agency license is required."

[2]The department argues that Anderson's First Amendment argument is not available because it was not raised at the administrative hearing. "[F]ailure to raise [a] constitutional issue during an administrative proceeding will not prevent a party from raising it in judicial review proceedings of the agency's action." (Deering, Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1979) § 6.11A, p. 77.)

■ "[S]peech is not removed from the protection of the First Amendment simply because it 'does "no more than propose a commercial transaction." ' " (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 503-504 [134 Cal.Rptr. 668, 556 P.2d 1119], quoting *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 762 [48 L.Ed.2d 346, 358, 96 S.Ct. 1817].) In part, commercial speech is afforded constitutional protection because of the listener-consumer's "concern for [its] free flow." (*Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350, 364 [53 L.Ed.2d 810, 823, 97 S.Ct. 2691].) The protection extends to advertising. (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra*; *Bates* v. *State Bar of Arizona, supra*.)

The focus of the case at bar is thus upon the validity of the licensure requirements of the pertinent statutes and regulations of the Department of Real Estate as applied to Anderson's constitutionally protected right of commercial speech.

Some limitation upon commercial speech is permissible so long as the regulation is "written narrowly and explicitly, in furtherance of a legitimate police power purpose." (*Welton* v. *City of Los Angeles, supra,* 18 Cal.3d 497, 504; see also *Goldberg* v. *Barger* (1974) 37 Cal.App.3d 987, 997 [112 Cal.Rptr. 827].) Where the regulation takes the form of licensure, it must be exercised setting forth "definite, objective guidelines for the issuance of [the license]" which as a minimum must "bear a rational relationship to a valid governmental purpose." (*Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661, and 663 [97 Cal.Rptr. 320, 488 P.2d 648]; cert. den., 404 U.S. 1038 [30 L.Ed.2d 729, 92 S.Ct. 710].)

■ Licensure of "advance fee rental agents" whose activity parallels that of Anderson seems permissible. In amending Business and Professions Code section 10131 in 1959 to bring advance fee loan solicitation within its sweep, the Legislature noted that many persons and concerns engaged in advance fee businesses embarked upon fraudulent practices including the collection in advance of amounts to be charged against future commissions that might be earned. It said: "To protect . . . owners of property, as well as the general public . . . it is necessary to subject the advance fee business to regulation and to limit the persons or entities who engage in the advance fee business to those of proven honesty and integrity, and to establish a fiduciary relationship between the promoters and the owners by requiring that they be licensed as real estate or business opportunity brokers and salesmen, and to require them to account to their principals for the expenditure of the funds entrusted to them. . . ." (*Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 9-10, fn. 6 [106 Cal.Rptr.

761, 507 P.2d 65].) The Legislature has thus stated a necessary and legitimate purpose for: (1) a licensure requirement of honesty and integrity of the licensee; (2) a requirement that the "advance fee rental agent" licensee be placed in a fiduciary relationship with his customer; and (3) accountability.

The licensure requirements here involved are definite and objective. There remains the question, however, whether they bear at least a rational relationship to the valid governmental purpose articulated by the Legislature.

Clearly the good character requirements for licensure of real estate brokers and salesmen bear that rational relationship. So do the various provisions of the statutes creating the fiduciary relationship of broker and salesman to customer and for accountability. The examination requirements for licensure of real estate brokers and salesmen are another matter as is the requirement of the regulations that an "advance fee rental agent" work for, and from the office of, a licensed real estate broker.

Anderson's activity consists of ascertaining available residential rental units, compiling a list of them, advertising the lists for sale, and selling the lists for a fee. His knowledge of the principles of real estate and business opportunity conveyancing, the law applicable to agency contracts, deposit receipts, deeds of trust, chattel mortgages and the like, or of land economics or appraisals, or even of the obligations between principal and agent is not germane to that activity.

The statutory purpose of fiduciary accountability can be fully served by means short of requiring the "advance fee rental agent" to be an employee of a licensed broker. In effect, the legislation and regulations, in order to achieve the proper objectives of creating a fiduciary relationship between persons in Anderson's class and their customers and that licensees be of good character, require that they meet tests of qualification unrelated to the purpose. The tests, while relevant to persons who negotiate sales of real property, are not germane to the actions of "advance fee rental agents" acting as does Anderson. As to those agents who do no more than publish, promote, and sell lists of available rental units, the scheme is thus overly strict in its licensure requirement. In light of the constitutional protection of commercial speech, the overly strict requirements of licensure cannot be saved by the administrative convenience incident to including the "advance fee rental agents" in existing license categories imposing the requisite fiduciary and related duties so

long as licensure to those categories depends upon the licensee meeting tests irrelevant to the "advance fee rental agents" activity. The Constitution requires that if necessary they be separately licensed subjected to qualifications rationally related to the reason for licensure.

The lack of a rational relationship between the manner in which an "advance fee rental agent" may obtain licensure and the legislative purpose for the license strikes at the heart of the reason for constitutional protection of commercial speech. The protection exists in large part to preserve the consumer's right to be informed. (*Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350, 364 [53 L.Ed.2d 810, 823].) Here the statutes and regulations impose both psychic and economic disincentives to the supply of information through the medium of publication of lists of available rental properties useful to the consumer in his search for housing.

Real estate brokers and salesmen who qualify for licensure must meet the standard of learning which the statutes and regulations prescribe for their profession. One who has met the standard of learning to qualify is necessarily pulled toward putting the learning to use. Given the choice of so acting or of becoming a mere compiler of lists, the incentive is toward the use of the learning.

If the real estate broker or salesman structures his activity so that he acts as a negotiator of rentals of residential property, he will be compensated by a commission generally based upon a percentage of consideration received by the lessor. If he publishes a list of available rental units which he sells for a fee of $25 or $30 as did Anderson, he gets no more than that. Only if the person sells lists at a multiple in excess of the difference between the price of the list and his average commission can he be economically ahead. There is no indication in the record or briefs that absent significant activity to promote the list device there will be such a demand that real estate brokers and salesmen will find any economic advantage in competing with their own commission business by publication. So long as the group of persons who may publish the lists is limited to those whose economic incentive seems to the contrary, the promotional activity necessary to wide dissemination is at least significantly inhibited.

Thus psychic and economic disincentives to means by which the consumer may be informed through a maximum number of channels are created by: (1) the examination requirements of the statute which limit

the persons who may publish lists of available rentals by requirements unrelated to legislative purpose; and (2) the regulations which require that the publication be from the office of a licensed broker.

We therefore conclude that the licensure requirements for "advance fee rental agents" as now drawn are so overly broad as to violate constitutional protection of commercial speech when applied to activity such as that of Anderson which involves no more than the ascertainment of available residential housing, the publication of lists of available units, the solicitation of customers for the lists, and the sale of the lists for a fee.

Because the licensure requirement is overly broad as applied to his activity, the trial court properly determined that Anderson was improperly disciplined for acting without the license.

*Disposition*

The judgment is affirmed.

Lillie, Acting P. J., concurred.

**HANSON, J.,** Concurring and Dissenting.—I concur in that portion of the majority opinion which concludes that the manner in which petitioner/respondent Raymond John Anderson (hereinafter Anderson) carried on his activities as briefly described in the majority opinion constituted conduct of an "advance fee" rental agent as defined in California Administrative Code, title 10, article 17, section 2850[1] (hereinafter section 2850), which requires a real estate license. (See *Rees* v. *Department of Real Estate* (1977) 76 Cal.App.3d 286 [142 Cal.Rptr. 789].)[2]

[1]Section 2850 defines advance fee rental agents as follows: "An 'advance fee rental agent' is: (a) a real estate licensee who negotiates rentals or furnishes rental information to prospective tenants whereby they are obligated to pay a fee in advance of services whether or not a rental is obtained through such services, (b) a real estate licensee who solicits or obtains rental listings from landlords or managers in expectation of compensation by including them in advance fee rental listings to be supplied prospective tenants."

[2]In *Rees*, the petitioner (Rees) owned and operated a property rental data service. He sought a writ of mandate directing respondent, the Department of Real Estate, to set aside and vacate its order compelling him to desist and refrain from conducting his business activities which included the sale to prospective tenants of information as to available rentals without first obtaining a real estate broker's license. Following the hearing the trial court rendered its findings and conclusions, which were similar to those

The evidence is uncontradicted, as alleged in the "Accusation" filed by the Department of Real Estate, that Anderson caused his real estate license to be placed on an inactive status prior to conducting the "advance fee" rental business which is the subject of this action. It is also uncontradicted that Anderson willfully disregarded and violated Business and Professions Code sections 10130[3] (which makes it unlawful for any person conducting the business Anderson was engaged in to operate without a license), 10131[4] and 10143[5] (pertaining to rentals by real estate licensees and the receipts for and refunds of fees). Therefore, disciplinary action has been clearly established. Moreover, since it is also clear that Anderson had previously been disciplined for violation of section 10143 and section 2856 of title 10 of the California Administrative Code whereby his license was suspended for a 90-day period which was stayed

on which respondent Department of Real Estate based its administrative decision and order, and denied the petition.

The Court of Appeal affirmed, holding that the trial court properly exercised its independent judgment on the evidence in making its decision and further held that petitioner Rees was acting both as a real estate broker and as an advance fee rental agent in conducting his business activities and hence was subject to the applicable licensing statutes and administrative regulations, and that his activities did not come within the finder's exception to such licensing requirements. The reviewing court also held that the licensing statutes and regulations as applied to persons selling rental information to prospective renters were in accordance with a valid state purpose and consequently did not violate petitioner Rees' rights to due process and equal protection.

The *Rees* court said at pages 297-298: "[A]s found by the court below, appellant's activities in furnishing rental information to a prospective tenant for a fee payable in advance of services, falls within the separate licensee classification of 'advance fee rental agent' as defined in section 2850, subdivision (a), title 10 of the California Administrative Code (fn. 6, *ante*). Given the legislative history concerning past abuses associated with advance fee operators (*Tyrone* v. *Kelley, supra,* 9 Cal.3d 1, 9-10, fn. 6 [106 Cal.Rptr. 761, 507 P.2d 65]), it seems equally clear that the intendment of the regulation was to specifically supervise advance fee rental commerce in order to protect the public from similar reprehensible practices of unlicensed operators that once plagued the real estate lenders' and sellers' market." (Fn. omitted.)

[3]All references to code sections are to the Business and Professions Code except section 2850 (see fn. 1, *ante*) unless otherwise designated.

· Section 10130 provides in pertinent part: "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department. . . ."

[4]Section 10131 provides in relevant part: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: . . . (b) Leases or rents or offers to lease or rent, *or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, . . .*" (Italics added.)

[5]Section 10143 provides that "Every real estate licensee who attempts to negotiate a rental or who furnishes rental information to a prospective tenant for a fee paid by said prospective tenant shall give every such prospective tenant a contract or receipt, and in such contract or receipt shall undertake to repay any amount over and above the sum of ten dollars ($10) service charge to the prospective tenant if the prospective tenant does not

for 3 years,[6] the order revoking his license in the instant case did not constitute an abuse of discretion.

Accordingly, by reason of the foregoing, I would reverse the superior court's judgment which concluded as a matter of law, although its findings of fact employing the independent judgment test were practically identical to those of the administrative law judge, that Anderson's activities did not constitute an "advance fee" rental business and as such did not require a real estate broker's license.

I PART COMPANY with the majority opinion when it concludes that the licensure requirements for "advance fee rental agents" as now drawn are so overly broad as to violate constitutional protection of commercial speech, "that as applied by the department to respondent's [Anderson's] activity, the key statute and regulation infringe upon respondent's [Anderson's] right to freedom of commercial speech by imposing overly restrictive requirements for licensure," and affirms the superior court judgment on that ground.[7]

While I am anything but indifferent to the fundamental societal value of our free (private) enterprise system[8] or to the great importance of preserving commercial speech under the umbrella of our First Amendment rights (see *Board of Medical Examiners* v. *Terminal-Hudson*

---

obtain a rental. A demand from the prospective tenant for the return of the fee, or any part of it, shall be made within 10 days following the final day on which the real estate licensee has contracted to perform services to the prospective tenant. In the event that rental information is not current or accurate in regard to the type of rental desired, the full fee shall be repaid to the tenant. Such contract or receipt shall also conform to the regulations adopted by the commissioner in order to effect disclosure of material information regarding the service to be provided to the prospective tenant."

[6]The record on appeal shows that Anderson for several years before the *prior* disciplinary action, "including the years of 1971, 1972, 1973 and up to approximately July 7, 1975" operated an "advance fee" rental business as defined by section 2850 and that Anderson and his agents "in at least eight instances failed and refused to timely return the amounts in excess of the ten dollar service fees to the clients. In several cases these clients made repeated efforts to obtain the refund due them. Respondent [Anderson] failed to refund the money due and also failed to provide these clients with any information whatsoever."

[7]This issue was raised for the first time on appeal.

[8]In an opinion recently ordered depublished by the state Supreme Court, I said: "Intrusions by any branch of government which inject socialization into the internal workings of our free market banking system tend to kill the goose that lays the golden egg. The golden egg is human welfare. The goose has been proven to be the free market or private enterprise system which has afforded Americans the highest standard of living of any system in the history of the world."

*Electronics, Inc.* (1977) 73 Cal.App.3d 376 [140 Cal.Rptr. 757], opn. by Hanson, J., concurred in by Wood, P. J., and Lillie, J.), I am not unaware of the fact that the Legislature has the authority to enact reasonable business regulations to protect the consuming public against abuses by "fast buck artists" who engage in "sharp practices" and overstep basic rules of fair play in the market place.

In *Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc., supra,* 73 Cal.App.3d 376, this court held that statutes which prohibited advertising of the stipulated price for furnishing a lens, lenses, glasses or frames and fittings or other commodities by a registered dispensing optician were unconstitutional as violating the free speech guaranteed by the First Amendment. We pointed out that in recent years the trend of the decisions, which held that commercial speech lay outside the pale of First Amendment protection, has been reversed and commercial speech has been brought within the scope of First Amendment protection and its dissemination is guaranteed in relation to such enterprises as dispensing pharmaceutical preparations (*Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]) and offering legal services (*Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691]). We pointed out that the United States Supreme Court in *Va. Pharmacy Bd.* "emphasized that the consumer's interest in commercial speech is substantial and that such speech often carries information of significant societal import since in serving to inform the public of the availability, nature and prices of products and services it performs an indispensable role in the allocation of resources in a free enterprise system, and it assures informed and reliable decisionmaking." (*Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc., supra,* 73 Cal.App.3d 376, 385.)

Thus, in *Va. Pharmacy Bd., Bates* and *Board of Medical Examiners* the focus was on the consumers' interest in commercial speech and the indispensable role it plays in the free enterprise system while in the instant case the focus is on the reverse side of the coin—*consumer protection.*

It is well established that the basic purpose of the Real Estate Act in general is to protect the buying and selling public from such practices by insuring as far as possible that real estate brokers and salesmen will be " 'honest, truthful and of good reputation.' " (*Riley* v. *Chambers* (1919) 181 Cal. 589, 591 [185 P. 855, 8 A.L.R. 418]; *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18 [7 Cal.Rptr. 328]; *Ferguson* v. *Schuenemann* (1959) 167 Cal.App.2d 413 [334 P.2d 668]; *Koeberle* v. *Hotchkiss* (1935) 8 Cal.App.2d

634 [48 P.2d 104]; 18 Ops.Cal.Atty.Gen. 200 (1951).) This protection extends to the activities of real estate *rental* agencies which require a broker's license as a condition to lawful operation. (*Grand* v. *Griesinger* (1958) 160 Cal.App.2d 397 [325 P.2d 475].)

Turning specifically to the "advance fee" rental business, the Supreme Court in *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1 [106 Cal.Rptr. 761, 507 P.2d 65], pointed out in footnote 6 at pages 9-10, that the Legislature stated that it found it necessary to enact legislation pertaining to "advance fee" deposits or retainers in that since 1948 a number of individuals and corporate entities engaged in the business of, amongst other things, making false and fraudulent misrepresentations to the owners, lessees or renters of property for the purpose of inducing them to entrust money to them for promised services. Some of such promoters often misrepresented that there would be no charge for the services unless and until the service was produced. Often the promises were made by the promoters with no intent of making a bona fide effort to render such services or with the intent to render merely token services and the effectiveness and efficiency of their services were grossly misrepresented resulting in the loss of millions of dollars by the consuming public. By reason of the foregoing practices the Legislature in Sacramento found it necessary "[t]o protect . . . the general public, and to insure the general welfare, . . . to subject the advance fee business to regulation and to limit the persons or entities who engage in the advance fee business to those of proven honesty and integrity, and to establish a fiduciary relationship between the promoters and the owners by requiring that they be licensed as real estate or business opportunity brokers and salesmen, and to require them to account to their principals for the expenditure of the funds entrusted to them. . . ." (*Id.,* at p. 10, fn. 6.)

In *Rees* v. *Department of Real Estate, supra,* 76 Cal.App.3d 286, the appellant who conducted activities similar in many respects to those conducted by Anderson in the instant case contended "that the licensing statutes as applied to his activities are overbroad and violate the Fifth and Fourteenth Amendments to the federal Constitution. While conceding the validity of the licensing statutes, he argues there is no reasonable relationship between the skills required in the conduct of his business and those subject to regulation under the real estate licensing laws. Focusing upon certain statutory qualifications for a real estate license, he argues that to impose such irrelevant requirements upon him is arbitrary and unduly burdensome and tantamount to an unlawful taking of his property without due process and a denial of equal protection of the law. . . ." (*Id.,* at p. 298, fns. omitted.)

The *Rees* court in a well reasoned opinion addressed the due process and the equal protection challenge and held there was no such constitutional infirmities. Although *Rees* also asserted that his activities were protected under the First Amendment, he did not argue or supply citations of authority in his brief. The *Rees* court treated the issue as waived but said at page 301: "[I]n any event, 'Reasonable business regulations are valid even though elements of public expression are involved.' (*Varanelli* v. *Structural Pest Control Board, supra,* 1 Cal.App.3d 217, 225 [81 Cal.Rptr. 492].)"

Sections 2850 through 2856[9] of the Administrative Code which pertain to "advance fee" rental agent transactions and which were promulgated by the Commissioner of Real Estate under the authority of section 10080 as reasonably necessary for the enforcement of the provisions of the licensing statutes are set out *in haec verba* in footnote 9 below.

---

[9]Section 2850 provides: "An 'advance fee rental agent' is: (a) a real estate licensee who negotiates rentals or furnishes rental information to prospective tenants whereby they are obligated to pay a fee in advance of services whether or not a rental is obtained through such services. (b) a real estate licensee who solicits or obtains rental listings from landlords or managers in expectation of compensation by including them in advance fee rental listings to be supplied prospective tenants."

Section 2851 provides: "No real estate salesman shall act as an 'advance fee rental agent' unless the salesman's employing broker (1) is actively engaged in the real estate or rental business at the same office; (2) is aware of and familiar with the operation and listing of all advance fee rentals in the office; (3) conducts immediate and close supervision of said salesman; and (4) approves all listings of places for rent and all listings of prospective tenants."

Section 2852 provides: "Prior to the acceptance of an advance rental fee from a prospective tenant, an advance fee rental agent shall provide the prospective tenant with a written contract which shall include at least the following: [¶] (1) Name and business address of the advance fee rental-broker licensee. [¶] (2) Acknowledgment of receipt of advance fee. [¶] (3) A description of the service to be performed by the advance fee rental agent, including significant conditions, restrictions and limitations where applicable. [¶] (4) The prospective tenant's specifications for the rental property, including but not limited to: [¶] (a) Type of structure, e.g., detached single family, apartment, duplex, etc. [¶] (b) Location by commonly-accepted residential area name, by designation of boundary streets or in any other manner affording a reasonable means of identifying acceptable locations. [¶] (c) Furnished or unfurnished. [¶] (d) Number of bedrooms. [¶] (e) Earliest occupancy date desired. [¶] (f) Maximum acceptable monthly rental. [¶] (5) Contract expiration date. [¶] (6) Provisions which shall read as follows unless different language shall have been approved in writing by the commissioner prior to use. [¶] (a) 'If the prospective tenant has not obtained a rental through information supplied by agent, the full amount remitted hereunder shall be repaid to the prospective tenant upon presentation of evidence by the prospective tenant that the advance fee rental agent supplied rental information that was not current or accurate.' [¶] (b) 'The amount of the fee paid to agent by prospective tenant over and above the sum of a $10 service charge shall be returned to prospective tenant if a rental is not obtained by him through the services of agent. A demand for a return of the fee over and above a $10 service charge

In my view the licensure requirements for "advance fee rental agents" and the provisions of sections 2850 through 2856 as presently drafted are not overly broad and do not violate constitutional protection of commercial speech and are reasonable business regulations in view of the history of abuses in this field.

shall be made by prospective tenant within ten days following the expiration of this contract. THIS CONTRACT EXPIRES ON (Full caps, bold face or italicize) _____.'
[¶] (c) 'A demand for a refund referred to above may be made in person at _____ or by mail directed to _____.'"

Section 2852.1 provides: "The form of contract proposed to be used by an advance fee rental agent to effect compliance with Section 2852 shall be filed with the Real Estate Commissioner prior to use. Any modification of a form previously filed with the commissioner, including a change in the name or business address of the advance fee rental broker, shall also be filed with the commissioner prior to use."

Section 2852.2 provides: "If an advance fee rental agent proposes to move his business office to a different location, he shall, prior to effecting the move, give notice of the address of the new location and his telephone number, if new, in a manner reasonably calculated to reach the prospective tenants with whom he has outstanding contracts."

Section 2852.3 provides: "A real estate broker who acts as an 'advance fee rental agent' shall deposit the amount of each advance rental fee collected less the amount thereof denominated 'service charge,' which shall not exceed $10 per prospective tenant, into a trust fund account not later than the next business day following receipt of the advance rental fee. The funds deposited into the trust account shall not be withdrawn therefrom earlier than ten days after the expiration of the contract referred to in Section 2852 with the following exceptions: [¶] (1) The funds may be withdrawn from the trust fund account at any time for the purpose of returning the funds to the payor thereof in accordance with the terms of the contract referred to in Section 2852. [¶] (2) The funds may be withdrawn from the trust fund account when and if the broker reasonably believes from evidence available to him that the payor of the funds has obtained a rental through information supplied by or on behalf of the broker."

Section 2853 provides: "An exact copy of said contract shall be furnished to the prospective tenant and the original shall be retained by the broker for a period of three years subject to the inspection of the commissioner and his deputies."

Section 2854 provides: "A list of all addresses given to said prospective tenant shall be prepared in duplicate, and the list shall clearly indicate the address of the property, a brief description thereof and the amount of the monthly rental. Where subsequent addresses are furnished to said prospective tenant by telephone or otherwise, said addresses shall be noted on the broker's copy of said list. Said list shall indicate by which broker or employee of the broker said addresses were furnished and the broker's copy shall be retained by him for a period of three years subject to examination by the commissioner and his deputies."

Section 2855 provides: "Any real estate broker who acts as an 'advance fee rental agent' shall make a written registry of all advertisements published or caused to be published by said licensee together with the address of the property advertised, the name of the party who offered the property for rent and his or her telephone number, if any. Said register shall be retained by the broker for a period of three years subject to inspection by the commissioner and his deputies."

Section 2856 provides: "No 'advance fee rental agent' shall furnish a prospective tenant with the address of a prospective rental unless such licensee has received specific authorization to offer said property for rent from the owner or its authorized agent. [¶] An advance fee rental agent shall not refer a prospective tenant to a rental listing unless the availability of the listing has been verified within three business days of the referral."

Here, Anderson was free to advertise and engage in "commercial speech" in his "advance fee" rental business provided he possessed an active real estate broker's license. He is no less restricted in that respect than lawyers admitted to practice who may now under *Bates* advertise and who are also required to pass certain examinations and be "honest, truthful and of good reputation" before "licensure." Moreover, the wisdom of the legislative enactments and regulations in respect to "advance fee" rental business as described herein as a protection to the consuming public is apparent in the case at bench. In addition to the finding by both the administrative law judge and the superior court that Anderson did not possess an active real estate license were findings that some of the rental lists supplied were not up-to-date and were inaccurate. This must inevitably lead to the unconscionable situation where many of Anderson's customers were literally sent out on frustrating "wild goose chases" or "snipe hunts" wasting their time, effort and money on telephone calls and gasoline. In one instance Anderson refused a refund as required by law and in another instance refused to grant a "refund on the basis that the contract provided that a refund would not be made for a period of two (2) years."[10]

[10]Following are some of the findings of fact made by the superior court which are exemplars of Anderson's mode of operation:

"During the period from July 7, 1975 through February 29, 1976, petitioner herein conducted the business operation which consisted of procuring information from landlords and newspaper advertising respecting property that was available for rent and compiled this information into a list of available rentals which list was sold to clients for a subscription price.

"On or about November 19, 1975, Randolph L. Brendia, a Deputy Real Estate Commissioner of the State of California, read an advertisement in the Huntington Park Daily Signal which stated the following: '$65.00 Secluded Sgl cottage Utils pd Choice area Homefinders 588-9104.' Said Brendia telephoned the number advertised expressing his interest in becoming a tenant at that property in response to which petitioner's employee solicited said Brendia by inviting him to come to the office where he would be provided with rental information if he became a subscriber for a subscription cost of $25.00.

"In September 1975 one Bruce F. Paul read in a Santa Monica newspaper, the Santa Monica Evening Outlook, an advertisement for a rental which invited readers to contact Homefinder's Guide in Santa Monica, California. Said Paul telephoned petitioner's employee at this office inquiring about the advertised rental and was invited to come into the Homefinder's Guide office. Said Paul went to the Homefinder's office on Santa Monica Boulevard and was advised he must subscribe for a list of rentals and pay a subscription cost of $30.00. Said Paul paid the subscription cost of $30.00 and received a list of rentals as well as a rental information contract. This contract provided for a refund within ten (10) days after the expiration of the contract if said Paul did not obtain a rental through the service. Said Paul received approximately four lists from Homefinder's Guide and upon investigation found that many had already been rented but had not been deleted from the lists furnished to him. In October 1975 said Paul demanded a refund of his subscription cost which was received by him on or about December 3, 1975.

"In September 1975 one Stella Weber read an advertisement in the Long Beach Press Telegram in Long Beach, California, advertising houses for rent and referring the reader

" 'Before a court may declare an act of the Legislature invalid of due process *or other constitutional conflict*, "such conflict must be clear, positive, and unquestionable." [Citations.]' " (*Rees* v. *Department of Real Estate, supra,* 76 Cal.App.3d 286, 299, italics added.) Neither Anderson's brief on appeal nor the majority opinion has persuasively demonstrated that either the legislative enactments or the administrative regulations adopted to implement those enactments pertaining to activities of "advance fee" rental businesses are in conflict with or infringe upon Anderson's right to freedom of commercial speech by imposing overly restrictive requirements for licensure.

In the case at bench the majority opinion wipes from the books the protection afforded the general public needing and seeking rental housing in respect to "advance fee" rental business operations. It frustrates the clear legislative intent forcing the Legislature back to the drawing board without any indication whatsoever what specific "key statutes and regulations" it alludes to and without giving any guidance on how such statutes or regulations could be redrafted to pass constitutional muster.

I would reverse the judgment of the superior court, thus affirming the findings of fact and law of the administrative law judge as adopted by the Department of Real Estate.

Appellants' petition for a hearing by the Supreme Court was denied July 19, 1979. Mosk, J., was of the opinion that the petition should be granted.

---

to Homefinder's Guide. Said Weber telephoned petitioner's employee at the Long Beach office and said employee invited Weber to come into the office to subscribe to a list of rentals for a subscription cost. Said Weber went to Homefinder's office and paid $25.00 to petitioner's employee and received a list of rentals and in connection therewith a rental information contract. Said contract provides for a refund within ten (10) days after expiration of the contract if Weber failed to obtain a rental through the service. Said Weber did not obtain a rental through the lists furnished her by petitioner's employee and found much of the information on the list to be inaccurate. Said Weber demanded a refund from the petitioner and petitioner refused to grant said refund on the basis that the contract provided that a refund would not be made for a period of two (2) years.

"In October 1975 one Marie Miller read an advertisement in the Huntington Park Signal Newspaper advertising houses for rent and referring the reader to Homefinder's Guide. Said Marie Miller went to Homefinder's Office on Gage Avenue in Huntington Park. Petitioner's employee advised said Marie Miller that it would be necessary to subscribe for a list of rentals and pay a $25.00 subscription cost which was done by said Miller. Mrs. Miller made inquiries of rentals furnished her on the Homefinder's list and found substantially all of the places had been rented. Approximately a week later Marie Miller demanded an additional list of information and was refused a new list by petitioner's employee on the grounds that he had cancelled her contract. A demand was then made by said Marie Miller for the return of her money and was refused a refund."